United States District Court
Southern District of Texas
**ENTERED**
August 14, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | CRIMINAL ACTION NO. H-14-22-1 |
| v. | § | |
| | § | CIVIL ACTION NO. H-26-1075 |
| HUEY P. WILLIAMS, JR. | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner Huey P. Williams, Jr., filed an original, amended, and supplemental *pro se* motion for writ of coram nobis or, in the alternative, relief under 28 U.S.C. § 2255. (Docket Entries No. 227, 228, 230.)

Having considered the motions, the record, and the applicable law, the Court **DISMISSES AS MOOT** the original motion, **DISMISSES FOR LACK OF JURISDICTION** the amended and supplemental motions for relief under § 2255, and **DENIES** the amended and supplemental motions for writ of coram nobis for the reasons shown below.

## I. BACKGROUND

A jury found petitioner guilty in 2015 of aiding and abetting health care fraud. The Court sentenced him to 63 months in prison followed by a three-year term of supervised release, and ordered payment of $1.96 million in restitution. A judgment of conviction was entered on November 24, 2015. The United States Court of Appeals for the Fifth Circuit affirmed the conviction on September 27, 2017, and the Supreme Court of the United States denied certiorari on February 20, 2018. Petitioner's *pro se* § 2255 motion challenging his

conviction and sentence, filed on June 14, 2018, was denied on August 27, 2021. Petitioner's appeal of the denial was dismissed as frivolous by the Fifth Circuit on July 15, 2022. Petitioner states that he completed his term of supervised release in February 2022.

Petitioner filed the instant motions in March and April 2026, seeking writ of coram nobis to set aside his conviction. In the alternative, he seeks relief pursuant to 28 U.S.C. § 2255, falsely representing to the Court that he did not file any earlier § 2255 motions.

## II. FACTUAL BACKGROUND AND CLAIMS

According to petitioner, "This case turns on a single controlling error: The grand jury charged prefabricated orthotic billing codes, but the government tried the case as though those codes required custom-fabricated braces." (Docket Entry No. 228, p. 1.) To this end, petitioner raises the following specific grounds for relief in his amended motion: (1) prosecutorial misconduct; (2) suppression of evidence; (3) witness intimidation; (4) constructive amendment of the indictment; (5) jury instruction error; (6) "Supreme Court Fraud Precedent and Regulatory Dispute"; and (7) failure to prove criminal intent. (Docket Entry No. 228, pp. 13–16.) He alleges three collateral consequences of his conviction for purposes of writ of coram nobis: a restitution lien, the "stigma of a felony conviction," and "the loss of civil rights." *Id.*, p. 16. The restitution judgment is a matter of record, but petitioner provides only conclusory assertions for the latter two alleged consequences.

Petitioner's first three claims arise primarily from an event that occurred during the 2015 trial. On the record and outside the presence of the jury, the prosecution informed the

Court that petitioner intended to call Robert Allen Michalewicz as a defense witness, and that the government had evidence against Michalewicz of "some potential criminal liability." (Docket Entry No. 66, p. 96–97.) Petitioner states in his amended motion that Michalewicz "was retained as an expert witness for the defense." (Docket Entry No. 228, p. 8.) No charges had been brought against Michalewicz as of the time of trial, and the prosecution argued that the witness should be advised of his Fifth Amendment rights prior to testifying. The Court agreed. Upon advice of counsel, Michalewicz stated on the record that, if called as a witness, he would invoke his Fifth Amendment right to remain silent. Defense counsel declined to call him as a witness. *Id.*, pp. 150–152. Petitioner claims here that the prosecution intimidated Michalewicz and suppressed his testimony, "depriv[ing] Petitioner of testimony that would have cleared him of the fraud charges." (Docket Entry No. 228, p. 8.) Despite the alleged witness intimidation occurring in 2015, petitioner sought no judicial relief on the issue until he filed the instant motions eleven years later.

Petitioner claims in his pending motions that Michalewicz met with federal investigators a month before trial in 2015 and that "[d]uring this meeting, investigators presented Mr. Michalewicz with the specific medical devices and billing codes (L1845 and L3760) that formed the basis of the indictment against Petitioner." *Id.* Petitioner further contends that Michalewicz explained to the federal investigators that "the braces were prefabricated braces and not custom fabricated orthoses. He told them that the codes billed L3760, L1845, L0631, L1930, L3912, and L1902 were the correct codes for the products

delivered. He further stated that the company did not deliver custom braces. This exculpatory information was never disclosed to the defense." *Id.* As discussed below, petitioner fails to establish that Michalewicz made these statements to a government investigator or that petitioner's defense counsel had no knowledge of Michalewicz's alleged "exculpatory" expert witness statements.

Petitioner submits two forms of non-record support for his motions: his own affidavit and a self-made transcription of a telephone call he allegedly had with Michalewicz in October 2025. Petitioner states the following in his affidavit:

> 1. I am the Petitioner in the above-captioned matter and have personal knowledge of the facts stated in this declaration.
>
> 2. Prior to trial, I was informed that Robert Michalewicz had met with federal investigators concerning the orthotic braces at issue in this case.
>
> 3. At trial, after the government advised the Court that Mr. Michalewicz might face criminal liability, he invoked his Fifth Amendment privilege and did not testify.
>
> 4. Because Mr. Michalewicz invoked his Fifth Amendment privilege, I had no ability to obtain testimony or a statement confirming what he had previously told investigators.
>
> 5. On October 16, 2025, I spoke with Mr. Michalewicz by telephone and informed him that I was recording the conversation. He acknowledged he was aware the call was being recorded.
>
> 6. The recording was made using a cellular telephone recording application. The original audio file has been preserved in its native format and has not been edited or altered in any way. The recording accurately reflects the conversation that occurred between myself and Mr. Michalewicz on October 16, 2025.

> 7. During that conversation he confirmed that he informed federal investigators that the braces involved in this case were not custom fabricated braces. He stated: "He asked me if any of them were custom. I said, no." He further stated, "No, I never did. Ain't never delivered a custom brace." He stated: "No, none of those braces are customs." When asked about the codes, he stated: "They should not have been. No, they were all A codes from what I know."
>
> 8. The [transcription] submitted as Exhibit A is a true and accurate recording of that conversation and has not been altered.

(Docket Entry No. 228-1, p. 5.) As shown in his affidavit, petitioner elected not to provide the Court with an audio copy of the recording, submitting instead his own alleged transcription of the conversation. Michalewicz did not authenticate the transcription, and nothing indicates that he knows of its existence, reviewed it, or authorized its use in court.[1]

In petitioner's Exhibit A transcription, the purported telephone call between petitioner and Michalewicz begins not with the expected "hello" and identification of the participants, but with petitioner's statement, "So they called you in on a Sunday," to which Michalewicz responded, "I was living in Austin. Moving my shit, so they had told me to come in on Sunday." (Docket Entry No. 228-1, p. 1.) Michalewicz stated he was not told he needed an attorney or that he would or could be "part of the crime." Michalewicz told "them" that none of the braces "they" showed him during the meeting "were custom races [*sic*]" and that "you had to be a CPO or a narcotic [*sic*] fitter and unlicensed state [*sic*]." *Id.*,

---

[1]Indeed, petitioner states in his amended motion that, "Mr. Michalewicz has expressed reluctance to provide a sworn affidavit due to concern about potential legal consequences arising from the government's prior warning regarding possible criminal liability. The recording therefore serves as the only available corroboration of the statements he previously made to investigators." (Docket Entry No. 228, p. 9.)

pp. 1–2. Michalewicz further allegedly stated that, "Everything they showed me, everything they brought to the Feds was totally soft goods, like off the shelves," and that "I wasn't there in 06, but yeah, it was the same shit," "It was a [*sic*] shit, whatever was there." *Id.*, p. 2. Michalewicz allegedly stated, "They started talking about a knee brace and they started talking about custom knee braces. And I told him, well, part of a custom versus it has to be fabricated." *Id.*, p. 3. He stated that "they" interviewed him in February 2015, "a month before the hearing, month before whatever the fucking court shit was going on." *Id.*, p. 4. Petitioner then stated, "Let me stop the recording. Let me stop it. That's good enough," which ended the transcription but obviously not the telephone call. *Id.*

The Court has reviewed the alleged transcription of the conversation provided by petitioner as Exhibit A and finds significant and material discrepancies between it and petitioner's affidavit statements. Contrary to petitioner's affidavit, the recording transcription does not "accurately reflect[] the conversation that occurred between [petitioner] and Mr. Michalewicz on October 16, 2025." The transcription is clearly only part of a lengthier conversation, as there is no beginning or ending of the telephone call. Although petitioner suggests he was unable to obtain any information from Michalewicz following trial until their telephone call ten years later, nothing in the record or motions supports such inability.

Moreover, the transcription does not match petitioner's affidavit testimony as to what Michalewicz allegedly stated during the telephone call. Contrary to petitioner's affidavit,

the transcription does not show that Michalewicz told federal investigators that the braces involved in petitioner's case were not custom fabricated braces or that he said "ain't never delivered a custom brace," nor was there any discussion of product codes. The transcription does not support petitioner's allegation that, "During this meeting, investigators presented Mr. Michalewicz with the specific medical devices and billing codes (L1845 and L3760) that formed the basis of the indictment against Petitioner." (Docket Entry No. 228, p. 8.) Nor did Michalewicz discuss his reasons for declining to testify or state that he was intimidated by any particular entity or individual. In short, petitioner fails to support his claim that the prosecution unlawfully intimidated Michalewicz, that his testimony was unlawfully suppressed, and that it would have exonerated petitioner. These and other significant and material discrepancies between petitioner's motions and affidavit and his alleged transcription of the telephone conversation render petitioner's claims unsupported.

Additionally, as discussed below, petitioner's motions and evidence provide no legal basis for his requested relief.

## III. LEGAL ANALYSIS

### A. Original Motion

Petitioner's motion for writ of coram nobis or, in the alternative, relief under § 2255 (Docket Entry No. 227), is **DISMISSED AS MOOT**. Petitioner filed an amended motion for writ of coram nobis, or in the alternative, relief under § 2255 (Docket Entry No. 228), which supercedes the original motion. The amended motion is pending before the Court.

B. Relief Under § 2255

Petitioner seeks relief under § 2255 in his amended and supplemental motions. (Docket Entries No. 228, 230.) The Court notes that petitioner filed a § 2255 motion in June 2018 and that it was denied in 2021. The United States Court of Appeals for the Fifth Circuit dismissed as frivolous petitioner's appeal of the denial in 2022. Thus, construed as brought under § 2255, the instant motions constitute successive § 2255 motions. Petitioner and online public records for the Fifth Circuit Court of Appeals do not show that petitioner was authorized by that court to file the instant § 2255 motions, and the Court lacks jurisdiction to adjudicate petitioner's pending § 2255 claims. *See* 28 U.S.C. §§ 2244(b)(3)(A), 2255(h).[2]

Petitioner informed the Court in his supplemental motion that he completed his terms of imprisonment and supervised release in February 2022 and "is no longer in custody for purposes of 28 U.S.C. § 2255." (Docket Entry No. 230, ¶ 3.) He further represented to the Court that "Petitioner has not previously filed a § 2255 motion." *Id.* This latter representation is false and constitutes a material misrepresentation of petitioner's earlier actions in this case. (Docket Entry No. 147.) Petitioner is **WARNED** that his making of false allegations or material misrepresentations in any future pleading filed in this or any related case may result in imposition of monetary sanctions against him.

---

[2]Petitioner argues in the alternative and without citing legal support that he remains "in custody" for purposes of § 2255 predicated on the restitution order. Because the Court lacks jurisdiction to consider petitioner's unauthorized successive § 2255 motion, it will pretermit consideration of petitioner's argument that he remains in custody.

The motions, construed as motions seeking relief under § 2255, are **DISMISSED WITHOUT PREJUDICE FOR LACK OF JURISDICTION**. (Docket Entries No. 228, 230.) All judicial relief requested within the amended and supplemental motions is **DISMISSED FOR LACK OF JURISDICTION**.

C. Writ of Coram Nobis

The writ of coram nobis is an extraordinary writ available only to a petitioner no longer in custody who seeks to vacate a criminal conviction. He must demonstrate that he suffers civil disabilities as a consequence of the conviction and that the challenged error is of sufficient magnitude to justify the extraordinary relief. *United States v. Esogbue*, 357 F.3d 532, 534 (5th Cir. 2004); *see also United States v. Lockhart*, 165 F.4th 933, 935 (5th Cir. 2026). The remedy of coram nobis "should issue to correct only errors which result in a complete miscarriage of justice." *See United States v. Castro*, 26 F.3d 557, 559 (5th Cir. 1994); *Esogbue*, at 535. A writ of coram nobis is not a substitute for an appeal and may be used to correct only the most fundamental of errors. *United States v. Dyer*, 136 F.3d 417, 422 (5th Cir. 1998). "[C]ourts must be cautious so that the extraordinary remedy of coram nobis issues only in extreme cases." *United States v. Denedo*, 556 U.S. 904, 916 (2009). Grounds for the writ must appear in the record before the Court. "Conclusory arguments . . . not supported by any record evidence, do not establish the exceptional circumstances warranting coram nobis relief." *Beadles v. United States*, 95 F. App'x 549, 549, 2004 WL 848283, at *1 (5th Cir. 2004) (per curiam).

Because writ of coram nobis is an extraordinary remedy, a petitioner seeking a writ of coram nobis must exercise reasonable diligence in seeking prompt relief. *Lockhart*, at 936–37; *Chico v. United States*, 703 F. App'x 292, 294 (5th Cir. Aug. 2, 2017) (holding that an unexplained two-year delay in filing a coram nobis petition failed to demonstrate reasonable diligence). A writ of coram nobis will issue only when no other remedy is available and when sound reasons exists for a petitioner's failure to seek appropriate earlier relief. *Esogbue*, at 535.

Petitioner presents no sound reasons for his failure to seek appropriate earlier relief. He could have first filed a petition for writ of coram nobis challenging his conviction in February 2022 when he completed his term of supervised release. However, he did not do so until March 2026, over four years later. Petitioner provides no justification for this lengthy delay. Although he alleges to have spoken with his proposed witness, Robert Michalewicz, in October 2025, petitioner was aware at trial in 2015 of the circumstances surrounding this witness's decision not to testify due to the Government's assertions of criminal activity against him. Petitioner further asserts that defense counsel had retained Michalewicz as an expert witness for the defense. Petitioner provides no explanation as to his delay in speaking with Michalewicz or why he did not pursue his claims for prosecutorial misconduct, witness intimidation, and suppression of evidence in his earlier 2018 § 2255 motion, a successive § 2255 motion, a § 2241 motion under the "savings clause," or in a petition for writ of coram nobis filed after his completion of his term of

supervised release in 2022. *See Esogbue*, at 535 ("Thus, in order to establish his entitlement to the writ [of coram nobis], Esogbue must, *inter alia*, provide 'sound reasons' for his failure to seek permission to assert the claims alleged in his coram nobis petition in a successive petition under 28 U.S.C. § 2255 while he was still in custody.").

Moreover, petitioner's remaining grounds for writ of coram nobis – those that do not rely on petitioner's alleged telephone conversation with Michalewicz – concern matters that arose at trial in 2015 and were of record. Petitioner supplies no reason why he was unable to raise those issues on direct appeal or in a petition for writ of coram nobis filed after his completion of his term of supervised release in 2022. *See Esogbue*, at 535. To any extent that he may attempt to argue that his attorneys refused to raise such arguments on appeal, he does not justify his failure to raise such points as claims for ineffective assistance of counsel in a § 2255 proceeding prior to completion of his sentence.

Because petitioner did not exercise reasonable diligence in seeking prompt relief, he cannot successfully seek a writ of coram nobis. Moreover, petitioner fails to direct the Court to any applicable legal authority establishing that a restitution lien, a generalized "stigma of a felony conviction," and an unspecified loss of civil rights are collateral consequences in his case warranting coram nobis relief.

Petitioner's motions and exhibits provide no meritorious basis for relief or show a complete miscarriage of justice. Petitioner's amended and supplemental motions (Docket

Entries No. 228, 230), construed as seeking writ of coram nobis, are **DENIED**. All other judicial relief requested within the amended and supplemental motions is **DENIED**.

## IV. CONCLUSION

For the above reasons, the Court **ORDERS** as follows:

1. Petitioner's motion for writ of coram nobis, or in the alternative for relief under 28 U.S.C. § 2255 (Docket Entry No. 227), is **DISMISSED AS MOOT**.

2. Petitioner's amended and supplemental motions, construed as motions for relief under 28 U.S.C. § 2255 (Docket Entries No. 228, 230), are **DISMISSED WITHOUT PREJUDICE FOR LACK OF JURISDICTION**. All judicial relief requested within the amended and supplemental motions is **DISMISSED FOR LACK OF JURISDICTION**.

3. Petitioner's amended and supplemental motions, construed as motions for writ of coram nobis (Docket Entries No. 228, 230), are **DENIED**. All judicial relief requested within the amended and supplemental motions is **DENIED**.

4. A certificate of appealability is **DENIED**.

Signed at Houston, Texas, on AUG 14 2026.

ALFRED H. BENNETT
UNITED STATES DISTRICT JUDGE